IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JOHNNIE LEE COKLEY,<br><br>    Petitioner,<br><br>    v.<br><br>KATHLEEN ALLISON,<br><br>    Respondent. | No. 2:25-CV-0793-WBS-DMC-P<br><br>FINDINGS AND RECOMMENDATIONS |

       Petitioner, a prisoner proceeding pro se, brings this petition for a writ of habeas corpus under 28 U.S.C. § 2254. Pending before the Court are Petitioner's petition for a writ of habeas corpus, ECF No. 1, and Respondent's answer, ECF No. 15.

       Because this action was filed after April 26, 1996, the provisions of the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") are presumptively applicable. See Lindh v. Murphy, 521 U.S. 320, 336 (1997); Calderon v. United States Dist. Ct. (Beeler), 128 F.3d 1283, 1287 (9th Cir. 1997), cert. denied, 522 U.S. 1099 (1998). Under AEDPA, federal habeas relief under 28 U.S.C. § 2254(d) is not available for any claim decided on the merits in

/ / /

/ / /

/ / /

/ / /

1

state court proceedings unless the state court's adjudication of the claim:

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

Under § 2254(d)(1), federal habeas relief is available only where the state court's decision is "contrary to" or represents an "unreasonable application of" clearly established law. Under both standards, "clearly established law" means those holdings of the United States Supreme Court as of the time of the relevant state court decision. See Carey v. Musladin, 549 U.S. 70, 74 (2006) (citing Williams, 529 U.S. at 412). "What matters are the holdings of the Supreme Court, not the holdings of lower federal courts." Plumlee v. Masto, 512 F.3d 1204 (9th Cir. 2008) (en banc). For federal law to be clearly established, the Supreme Court must provide a "categorical answer" to the question before the state court. See id.; see also Carey, 549 U.S. at 76-77 (holding that a state court's decision that a defendant was not prejudiced by spectators' conduct at trial was not contrary to, or an unreasonable application of, the Supreme Court's test for determining prejudice created by state conduct at trial because the Court had never applied the test to spectators' conduct). Circuit court precedent may not be used to fill open questions in the Supreme Court's holdings. See Carey, 549 U.S. at 74.

In Williams v. Taylor, 529 U.S. 362 (2000) (O'Connor, J., concurring, garnering a majority of the Court), the United States Supreme Court explained these different standards. A state court decision is "contrary to" Supreme Court precedent if it is opposite to that reached by the Supreme Court on the same question of law, or if the state court decides the case differently than the Supreme Court has on a set of materially indistinguishable facts. See id. at 405. A state court decision is also "contrary to" established law if it applies a rule which contradicts the governing law set forth in Supreme Court cases. See id. In sum, the petitioner must demonstrate that Supreme Court precedent requires a contrary outcome because the state court applied the wrong legal rules. Thus, a state court decision applying the correct legal rule from Supreme Court cases to the facts of a particular case is not reviewed under the "contrary to" standard. See id. at

2

1  406.  If a state court decision is "contrary to" clearly established law, it is reviewed to determine
2  first whether it resulted in constitutional error.  See Benn v. Lambert, 283 F.3d 1040, 1052 n.6
3  (9th Cir. 2002).  If so, the next question is whether such error was structural, in which case federal
4  habeas relief is warranted.  See id.  If the error was not structural, the final question is whether the
5  error had a substantial and injurious effect on the verdict, or was harmless.  See id.

6  State court decisions are reviewed under the far more deferential "unreasonable
7  application of" standard where it identifies the correct legal rule from Supreme Court cases, but
8  unreasonably applies the rule to the facts of a particular case.  See Wiggins v. Smith, 539 U.S.
9  510, 520 (2003).  While declining to rule on the issue, the Supreme Court in Williams, suggested
10 that federal habeas relief may be available under this standard where the state court either
11 unreasonably extends a legal principle to a new context where it should not apply, or
12 unreasonably refuses to extend that principle to a new context where it should apply.  See
13 Williams, 529 U.S. at 408-09.  The Supreme Court has, however, made it clear that a state court
14 decision is not an "unreasonable application of" controlling law simply because it is an erroneous
15 or incorrect application of federal law.  See id. at 410; see also Lockyer v. Andrade, 538 U.S. 63,
16 75-76 (2003).  An "unreasonable application of" controlling law cannot necessarily be found even
17 where the federal habeas court concludes that the state court decision is clearly erroneous.  See
18 Lockyer, 538 U.S. at 75-76.  This is because "[t]he gloss of clear error fails to give proper
19 deference to state courts by conflating error (even clear error) with unreasonableness."  Id. at 75.
20 As with state court decisions which are "contrary to" established federal law, where a state court
21 decision is an "unreasonable application of" controlling law, federal habeas relief is nonetheless
22 unavailable if the error was non-structural and harmless.  See Benn, 283 F.3d at 1052 n.6.

23 The "unreasonable application of" standard also applies where the state court
24 denies a claim without providing any reasoning whatsoever.  See Himes v. Thompson, 336 F.3d
25 848, 853 (9th Cir. 2003); Delgado v. Lewis, 223 F.3d 976, 982 (9th Cir. 2000).  Such decisions
26 are considered adjudications on the merits and are, therefore, entitled to deference under the
27 AEDPA.  See Green v. Lambert, 288 F.3d 1081 1089 (9th Cir. 2002); Delgado, 223 F.3d at 982.
28 The federal habeas court assumes that state court applied the correct law and analyzes whether the

3

state court's summary denial was based on an objectively unreasonable application of that law. See Himes, 336 F.3d at 853; Delgado, 223 F.3d at 982.

# I. BACKGROUND

## A. Facts[1]

The state court recited the following facts, and Petitioner has not offered any clear and convincing evidence to rebut the presumption that these facts are correct:

> *Factual Background*
> We summarize the facts only briefly, as the facts are generally not material to this appeal. Defendant and T.D. were involved in an ongoing abusive relationship, which began in spring 2019 and continued until March 2020, when T.D. left defendant. During their relationship, defendant physically abused, pimped, pandered, and trafficked T.D. throughout the State of California and across state lines, including a trip to Phoenix, Arizona.
> The incident that formed the basis for the enhancement that is the subject of this appeal occurred in Phoenix, Arizona in December 2019. A surveillance video of the incident showed T.D. and defendant walking toward the entrance of a gas station convenience store. While viewing the video of the incident, T.D. testified that she appeared to be upset and that she began running toward the store. The video showed her lying on the floor of the convenience store, and defendant driving away from the scene. T.D. recalled that defendant "did that to [her]," and that that "type of violence" was consistent with the way he often assaulted her. T.D. did "[n]ot really" recall being in the store, but she recalled waking up in the hospital. She received stitches or staples to repair a wound on her head. Upon leaving the hospital, T.D. reunited with defendant because she did not have identification, money, or a cell phone, and she did not want to be left in Arizona, where she did not know anyone, without a way to get back to California.
> After T.D. left defendant, he continued to pursue her, kidnapping her on one occasion and stabbing her on another.
>
> *Procedural History*
> As relevant here, defendant was charged with human trafficking (§ 236.1, subd. (b); count three), pimping (§ 266h, subd. (a); count four), and pandering (§ 266i, subd. (a)(2); count five); each count was alleged to have occurred between June 6, 2019, and March 22, 2022. As to each of those counts, the information alleged an enhancement that defendant personally inflicted great bodily injury under circumstances involving domestic violence during the commission of a felony. (§ 12022.7, subd. (e).)
> During closing argument, the prosecutor elected the Phoenix incident as the sole basis for the great bodily injury enhancement. He argued that the crimes of

---

[1] Pursuant to 28 U.S.C. § 2254(e)(1), ". . . a determination of a factual issue made by a State court shall be presumed to be correct." Findings of fact in the last reasoned state court decision are entitled to a presumption of correctness, rebuttable only by clear and convincing evidence. See Runningeagle v. Ryan, 686 F.3d 759 n.1 (9th Cir. 2012). Petitioner bears the burden of rebutting this presumption by clear and convincing evidence. See id. These facts are, therefore, drawn from the state court's opinion(s), lodged in this court. Petitioner may also be referred to as "defendant."

pimping and pandering were established by defendant's prior contact with law enforcement in 2019, but that the crime of human trafficking was first proved beyond a reasonable doubt at the time of the Phoenix incident on the basis that defendant drove T.D. to Phoenix to have her work as a prostitute, he obtained money as a result, he used violence to keep her in Phoenix, and she did not have clothes, identification, or a way to get back to California without defendant.[2]

    [2] The prosecutor noted, however, that he was not required to point to an exact moment when human trafficking was established because human trafficking was alleged as a continuous course of conduct. We will discuss this principle in greater detail in the Discussion, post.

Defense counsel argued in closing that there was no evidence the injuries defendant inflicted on T.D. in Phoenix were related to human trafficking.

    The jury found defendant guilty in counts three through five, and it found true the great bodily injury enhancement alleged as to each of those counts. The trial court sentenced defendant to an aggregate term of 55 years eight months in prison, which included a sentence of 20 years on count three, doubled due to defendant's prior strike, and the upper term of five years for the great bodily injury enhancement on that count. Sentences for counts four and five and the great bodily injury enhancements thereon were stayed.

    Defendant timely appealed. The case was fully briefed in November 2023 and assigned to the current panel at the end of that month.

ECF No. 14-22, pgs. 2-4.

### B.  **Procedural History**

On May 11, 2022, a jury convicted Petitioner of assault with a deadly weapon on March 22, 2020 (Triareese Doe), human trafficking between June 6, 2019 and March 22, 2022 (Triareese Doe), pimping between June 6, 2019, and March 22, 2022, (Triareese Doe), pandering between June 6, 2019, and March 22, 2022, (Triareese Doe), kidnapping between March 2, 2022, and March 22, 2022, (Triareese Doe), evading arrest on April 9, 202, unlawful possession of ammunition by felon, and evading arrest on April 11, 2020. See ECF No. 1, pgs. 19-22. The jury also found Petitioner guilty of the alleged enhancements attached to each of those counts and Petitioner waived a jury trial on a prior strike allegation. See id. at 21-22. The trial court sentenced Petitioner to 55 years and eight months. See id. at 22. Petitioner appealed his conviction to the California Court of Appeal, raising the same claims he raises in this petition. See ECF No. 14-22. On February 14, 2024, the California Court of Appeal affirmed the conviction and sentence.[2] See id. The California Supreme Court denied review without comment or citation. See ECF No. 14-24.

---

[2]  The Court of Appeal additionally ordered the abstract of judgment to be corrected as it previously misstated the number for the statute Petitioner was convicted of in count 3. See id.

### III. DISCUSSION

Petitioner raises three Claims for relief, as follows: (1) the court lacked jurisdiction to impose a great bodily injury enhancement based solely on acts in Arizona; (2) Petitioner's Sixth and Fourteenth Amendment rights were violated when the trial court denied defense counsel's request for a "continuance to research a novel jurisdictional question and file a sentencing brief;" and (3) trial counsel was ineffective as demonstrated by their failure to file a timely written motion for continuance. See ECF No. 1, pgs. 13-14. To provide the facts and arguments, Petitioner attached the opening brief that Petitioner filed in the California Court of Appeal. See id. generally. Petitioner did not add any additional information or arguments in the instant federal petition as to Petitioner's habeas claims. See id. and ECF No. 14-21. Petitioner generally requested that he be provided leave to amend "if required to do in order to make sure the habeas is in conformity with all rules." ECF No. 1, pg. 9.

Respondent contends that Petitioner's first claim relies entirely on state law and the Court of Appeal did not err in denying any of Petitioner's claims. See ECF No. 15, pg. 6.

As a preliminary matter, this Court finds the instant petition conforms to the procedural rules and therefore does not find that leave to amend is warranted. For the reasons discussed below, the Court finds that federal habeas relief is not warranted because the Court of Appeal's decisions did not violate any clearly established federal law and Petitioner fails to establish prejudice as to his ineffective assistance of counsel claims.

**A.  Jurisdiction**

A writ of habeas corpus is available under 28 U.S.C. § 2254 only on the basis of a transgression of federal law binding on the state courts. See Middleton v. Cupp, 768 F.2d 1083, 1085 (9th Cir. 1985); Gutierrez v. Griggs, 695 F.2d 1195, 1197 (9th Cir. 1983).  It is not available for alleged error in the interpretation or application of state law. Middleton, 768 F.2d at 1085; see also Lincoln v. Sunn, 807 F.2d 805, 814 (9th Cir. 1987); Givens v. Housewright, 786 F.2d 1378, 1381 (9th Cir. 1986).  Habeas corpus cannot be utilized to try state issues de novo. See Milton v. Wainwright, 407 U.S. 371, 377 (1972).

///

1          However, a "claim of error based upon a right not specifically guaranteed by the
2 Constitution may nonetheless form a ground for federal habeas corpus relief where its impact so
3 infects the entire trial that the resulting conviction violates the defendant's right to due process."
4 Hines v. Enomoto, 658 F.2d 667, 673 (9th Cir. 1981) (citing Quigg v. Crist, 616 F.2d 1107 (9th
5 Cir. 1980)); see also Lisenba v. California, 314 U.S. 219, 236 (1941).  In order to raise such a
6 claim in a federal habeas corpus petition, the "error alleged must have resulted in a complete
7 miscarriage of justice."  Hill v. United States, 368 U.S. 424, 428 (1962); Crisafi v. Oliver, 396
8 F.2d 293, 294-95 (9th Cir. 1968); Chavez v. Dickson, 280 F.2d 727, 736 (9th Cir. 1960).

9          Petitioner claims that his court of conviction had no jurisdiction over the great
10 bodily injury acts that occurred in Arizona and therefore, the related enhancement should be
11 reversed. See ECF No. 1, pgs. 48-52. To support this argument, Petitioner relies on People v.
12 Joseph (2021) 63 Cal. App. 5th 1058, 1068-1069. See id. The California Court of Appeal
13 addressed this argument in their February 14, 2024, decision. See ECF No. 14-22. There, the
14 Court determined that Joseph is distinguishable because, the defendant there was challenging "a
15 separately charged criminal act," whereas here, Petitioner is challenging an enhancement, which
16 the Court described as "a specified aspect of a criminal act," and because the court had
17 jurisdiction over the criminal act, and the act included a continuous course of conduct, it too had
18 jurisdiction over the aspect in Arizona. Id. at 4-10.

19          Petitioner generally argues that this decision was contrary to Supreme Court
20 precedent in Holiday v. Johnston, 313 U.S. 342 (1941). ECF No. 1, pg. 9. Petitioner asserts that
21 Holiday holds that if a petition is insufficient, it may be amended, and the court should give leave
22 to amend. See id. This Court agrees with Petitioner's characterization of the holding in Holiday
23 but does not find that it applies here. Petitioner's claim of lack of jurisdiction was not denied
24 because it was insufficient but because the Court of Appeal did not agree with Petitioner's
25 argument. See ECF No. 14-22. In dismissing Petitioner's jurisdictional claim, the Court of Appeal
26 provided the following analysis:

27 > To support his challenge to the trial court's jurisdiction over the great
> bodily injury enhancement, defendant relies exclusively on *Joseph*, *supra*, 63
28 > Cal.App.5th 1058. The defendant in *Joseph* was charged with conspiracy to

7

commit human trafficking, and five counts of rape that occurred in North Carolina. The appellate court agreed with defendant's contention that the trial court lacked jurisdiction over the rape charges because the rapes were " 'commenced' and 'completed' in North Carolina"; that is, no part of the offenses occurred in California (§ 27), and no evidence suggested that the defendant had formed the intent to commit the rapes or had performed any preparatory acts related to the rapes in California (§ 778a). (*Joseph*, at p. 1069.) The court also rejected the Attorney General's argument that jurisdiction was conferred on the basis that the charged rapes furthered the human trafficking conspiracy, which originated in California. (*Joseph*, at pp. 1069-1070.) The court reiterated that there was no evidence that the defendant had performed any preparatory acts in California toward the completion of the offense of rape, which was a separate charged offense from the human trafficking offense. (*Id.* at p. 1070.)

This case does not involve jurisdiction taken over separately charged criminal acts; instead, here we are called upon to determine whether the trial court properly took jurisdiction over sentencing enhancements. Addressing that issue requires us to discuss the nature of such enhancements and the relationship between the enhancements and the crimes to which they attach. In *People v. Ahmed* (2011) 53 Cal.4th 156 at page 163, our Supreme Court discussed what constitutes a "criminal act" in the context of applying section 654. [5]

> [5] Section 654, subdivision (a) provides in relevant part: "An act or omission that is punishable in different ways by different provisions of law may be punished under either of such provisions, but in no case shall the act or omission be punished under more than one provision."

The court observed that "enhancements are different from substantive crimes" because, while enhancement statutes may resemble substantive offenses in that they impose additional punishment based on a factual finding that a defendant engaged in particular conduct while committing a crime, they do not define criminal acts and therefore are not separate offenses. (*Ahmed*, at p. 163.) Put another way: "Provisions describing substantive crimes . . . generally define criminal *acts*. But enhancement provisions do not define criminal acts; rather, they increase the punishment for those acts. They focus on *aspects* of the criminal act that are not always present and that warrant additional punishment." (*Ibid.*) Great bodily injury enhancements focus on the " '*circumstances of the crime* and typically focus on what the defendant did when the current offense was committed." (*Id.* at p. 161, see *id.* at p. 164.) With that understanding of what constitutes a sentencing enhancement, we conclude *Joseph* is inapplicable to this case. [6]

> [6] Although we conclude *Joseph* is distinguishable, we note our disagreement with defendant's characterization of *Joseph* as "controlling authority." "We, of course, are not bound by the decision of a sister Court of Appeal. [Citation.] But '[w]e respect stare decisis . . . which serves the important goals of stability in the law and predictability of decision. Thus, we ordinarily follow the decisions of other districts without good reason to disagree.' " (*The MEGA Life & Health Ins. Co. v. Superior Court* (2009) 172 Cal.App.4th 1522, 1529.)

*Joseph* recognized that California courts lack territorial jurisdiction over *criminal acts* occurring entirely in another state. But here, the relevant criminal acts are human trafficking, pimping, and pandering. The infliction of great bodily injury is not a separate criminal act; rather, it is an *aspect* of the criminal act. Accordingly, the trial court has jurisdiction over any aspect of a criminal act to the same extent that it has jurisdiction over the criminal act as a whole.

The parties do not dispute that the trial court had jurisdiction over the criminal acts of human trafficking, pimping, and pandering as charged here.

In ruling on its jurisdiction, the trial court found that defendant engaged in

|   |   |
|---|---|
| 1 | a continuous course of conduct of human trafficking over an extended period of time by bringing T.D. to various locations in California and to other states, including Arizona, with the intent of engaging T.D. in prostitution. Because the trial court had jurisdiction over defendant's continuous course of conduct, including the portion of that conduct occurring in other states, it had jurisdiction over defendant's infliction of great bodily injury that was an aspect of that course of conduct. |

ECF No. 14-22, pgs. 8-10

The Court does not find that the Court of Appeal's determination here is contrary to established federal law. Petitioner's jurisdiction argument relies entirely on state law. Further, because it challenges the jurisdiction of an enhancement, this Court cannot find that, even if the state court's determination was incorrect, such an error could "so infects the entire trial that the resulting conviction violates the defendant's right to due process." Hines v. Enomoto, 658 F.2d 667, 673 (9th Cir. 1981). Finding Petitioner only raises arguments that arise out of state law and does not show the trial court violated due process, the Court rejects Petitioner's first claim.

### B. Request for Continuance

Petitioner next argues that his Sixth and Fourteenth Amendment rights were violated when the trial court denied Petitioner's request for a continuance "to research the jurisdictional issue discussed *ante* and to file a sentencing brief." ECF No. 14-22, pg. 10 (emphasis in original). According to Petitioner, his counsel requested a one-week continuance to prepare a sentencing brief on June 9, 2022. See ECF No. 1, pg. 53. The trial court rejected this request, asserting if did not find good cause for a continuance. See id. at 56. After discovering that Petitioner's counsel had not reviewed the probation report, the trial court took a recess to allow counsel time to review the report before sentencing. See id. at 56-57. Petitioner raised this claim to the Court of Appeal. See id. at 53-62. Finding "no reasonable probability that the result would have been more favorable to defendant had the court granted the continuance," the Court of Appeal rejected this claim. ECF No. 14-22, pg. 10. The Court of Appeal provided the following analysis in support of that conclusion:

> Defendant fails to demonstrate a reasonable probability of a more favorable result had the trial court granted his motion to continue the sentencing. We address defendant's arguments in turn.
> First, defendant contends a continuance would have allowed him to argue the issue of territorial jurisdictional with the benefit of *Joseph*, *supra*, 63 Cal.App.5th 1058. But as we concluded *ante,* the trial court correctly determined

that it had territorial jurisdiction over the criminal conduct at issue here.

Second, defendant asserts that the trial court imposed the upper term on his human trafficking offense on the basis that his sexual abuse trauma did not contribute to the commission of his current offenses, and he contends it was reasonably probable that his sentencing brief would have persuaded the court to reach a different conclusion. As relevant here, section 1170, subdivision (b)(6) requires the court to impose the low term if sexual abuse suffered by a defendant as a child was a contributing factor in the commission of the offense, "unless the court finds that the aggravating circumstances outweigh the mitigating circumstances that imposition of the lower term would be contrary to the interests of justice."

However, contrary to defendant's argument, the trial court *accepted* counsel's representation that defendant experienced sexual abuse trauma as a child, and it recognized that this finding could "trigger the presumptive low term if not outweighed by other factors." The court then weighed the aggravating factors against that lone mitigating circumstance, and it found that imposing the low or middle term "would be contrary to the interest of justice." Thus, a hypothetical sentencing brief arguing that defendant's sexual trauma contributed to his current offenses was not reasonably probable to result in a more favorable outcome at sentencing because the court accepted counsel's representation, and it imposed the upper term despite the applicability of section 1170, subdivision (b)(6), on other grounds.

Third, defendant argues that it was reasonably probable his sentencing brief would persuade the trial court that it could strike the enhancement without jeopardizing public safety. Defendant asserts that his sentencing brief would have informed the court that he would be an elderly man when released even if the court struck the enhancement, and that elderly men are unlikely to recidivate.[**8**]

> [**8**] Specifically, defendant asserts that he would have informed the court that he was 40 years old at the time of sentencing, would have been sentenced to 45 years eight months in the absence of the imposed enhancements, and would have served 85 percent of the imposed sentence (see §§ 2933.1, subd. (a) [person convicted of felony offense listed in § 667.5, subd. (c) shall accrue no more than 15 percent of worktime credit], 667.5, subd. (c)(8) [violent felony where great bodily injury allegation under § 12022.7 is charged and proved]).

Defendant's argument fails to persuade because trial counsel made that precise argument at the sentencing hearing when asking the court to strike his prior strike. Counsel argued that defendant was 40 years old at the time of sentencing, and even if the court struck his prior strike conviction, his sentence would still be longer than 25 years. Counsel added: "As the Court is aware, as individuals get older, their risk of recidivism is reduced. These are violent felonies for which he will serve at 85 percent. And so [defendant] wouldn't even be eligible for parole until sometime in his mid sixties [*sic*]." Despite being fully aware of the argument defendant now claims was reasonably likely to alter the court's analysis, the court concluded that "it is an almost certainty" that dismissing the enhancement would result in physical injury or serious danger to others. Therefore, it is not reasonably probable that such an argument made in a hypothetical sentencing brief would have been more persuasive than the same exact argument made orally at sentencing.

ECF No. 14-22, pgs. 14-16.

///

10

        "There are no mechanical tests for deciding when a denial of a continuance is so arbitrary as to violate due process. The answer must be found in the circumstances present in every case, particularly in the reasons presented to the trial judge at the time the request is denied." Ungar v. Sarafite, 376 U.S. 575, 589, 84 S. Ct. 841, 11 L. Ed. 2d 921 (1964). To determine whether denial of a continuance violates due process, the Ninth Circuit directs the court to consider (1) the appellant's diligence in preparing their defense; (2) the likelihood that the need for a continuance would have been met had the continuance been granted; (3) the inconvenience imposed on the court and the opposing party by the continuance; and (4) the extent of harm suffered by the appellant as a result of the denial. United States v. Flynt, 756 F.2d 1352, 1358-59 (9th Cir. 1985). To "obtain a reversal, appellant must show at a minimum that he has suffered prejudice as a result of the denial of his request." Id. at 1359.

        This Court agrees with the Court of Appeal that Petitioner cannot establish prejudice here. As to the request for continuance to research the jurisdictional issue, the Court of Appeal concluded there is no jurisdictional issue and therefore, additional time to research the matter would not have changed the outcome. Thus, this Court concludes that the Court of Appeal's rejection of this claim was neither contrary to nor based on an unreasonable application of clearly established law.

        As to the request for time to prepare a sentencing brief, this Court reviewed the trial court transcript from sentencing and confirmed that the trial court there did accept the argument that Petitioner experienced sexual abuse trauma and found that was "the only mitigating factor" present. ECF No. 14-16, pg. 54. The trial court explicitly found that such "single mitigating factor" did not outweigh the "numerous" aggravating factors the trial court found true. See id. at 54-56. Thus, the trial court concluded that "it would be contrary to the interest of justice to give a defendant in this case the low term." Id. at 56. The trial court found that Petitioner, at the time was "40 years old and has attained a long, long history of preying on other people and committing felonies and misdemeanors and inflicting, just, incredible trauma on Traireese Doe." Id. It is clear from the trial court's analysis that, given Petitioner's age, history, and the aggravating factors found to be true, any further information about this "single mitigating factor"

would not have changed the trial court's decision as to sentencing. Thus, Petitioner suffered no prejudice due to the denial of the motion for continuance as to preparing a sentencing report. Absent such prejudice, this claim is without merit and therefore, this Court finds that the Court of Appeal's rejection of this claim is not contrary to any established federal law.

Finding Petitioner fails to show prejudice as to either reason for a continuance and that the Court of Appeal did not err in rejecting this claim, this Court does not find there is a basis for habeas relief on this claim.

### C. Ineffective Assistance of Counsel

It is axiomatic that an indigent criminal defendant has a Sixth Amendment right to appointment of counsel. See Gideon v. Wainwright, 372 U.S. 335 (1963). However, this right does not guarantee that a "defendant will . . . be represented by the lawyer he prefers." Wheat v. United States, 486 U.S. 153, 159 (1988). Citing Faretta v. California, 422 U.S. 806 (1975), the Court further explained that "a criminal defendant has a Sixth Amendment right to represent himself if he voluntarily elects to do so" but that this right "does not encompass the right to choose any advocate if the defendant wishes to be represented by counsel." Id. at 159 n.3.

The Sixth Amendment guarantees the effective assistance of counsel. The United States Supreme Court set forth the test for demonstrating ineffective assistance of counsel in Strickland v. Washington, 466 U.S. 668 (1984). First, a petitioner must show that, considering all the circumstances, counsel's performance fell below an objective standard of reasonableness. See id. at 688. To this end, petitioner must identify the acts or omissions that are alleged not to have been the result of reasonable professional judgment. See id. at 690. The federal court must then determine whether, in light of all the circumstances, the identified acts or omissions were outside the wide range of professional competent assistance. See id. In making this determination, however, there is a strong presumption "that counsel's conduct was within the wide range of reasonable assistance, and that he exercised acceptable professional judgment in all significant decisions made." Hughes v. Borg, 898 F.2d 695, 702 (9th Cir. 1990) (citing Strickland, 466 U.S. at 689).

///

        Second, a petitioner must affirmatively prove prejudice. See Strickland, 466 U.S. at 693. Prejudice is found where "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Id. at 694. A reasonable probability is "a probability sufficient to undermine confidence in the outcome." Id.; see also Laboa v. Calderon, 224 F.3d 972, 981 (9th Cir. 2000). A reviewing court "need not determine whether counsel's performance was deficient before examining the prejudice suffered by the defendant as a result of the alleged deficiencies . . . If it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice . . . that course should be followed." Pizzuto v. Arave, 280 F.3d 949, 955 (9th Cir. 2002) (quoting Strickland, 466 U.S. at 697).

        Petitioner contends that his counsel's "failure to file a timely written motion for continuance violated" Petitioner's Sixth Amendment right to counsel. ECF No. 1, pgs. 2-3. The Court of Appeal rejected such argument, concluding "[b]ecause defendant has failed to demonstrate a reasonable probability that successfully obtaining a continuance would have resulted in a more favorable outcome, his claim lacks merit." ECF No. 14-22, pg. 16. As discussed above, this Court finds that Petitioner cannot establish that he suffered prejudice as a result of the trial court denying the motion to continue. Accordingly, this Court cannot find that but for any alleged errors by counsel, the result of the proceeding would have been different. Thus, this Court concludes that the Court of Appeal's rejection of this claim was neither contrary to nor based on an unreasonable application of clearly established law.

### IV.  CONCLUSION

        Based on the foregoing, the undersigned recommends that Petitioner's petition for a writ of habeas corpus (ECF No. 1) be denied.

        These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l). Within 14 days after being served with these findings and recommendations, any party may file written objections with the court. Responses to objections shall be filed within 14 days after service of objections.

1  Failure to file objections within the specified time may waive the right to appeal.  See <u>Martinez v. Ylst</u>, 951 F.2d 1153 (9th Cir. 1991).

Dated:  November 19, 2025

_____
DENNIS M. COTA
UNITED STATES MAGISTRATE JUDGE